[Civ. No. 14097. First Dist., Div. Two. Dec. 6, 1949.]

DELBERT W. BOUTWELL, Respondent, v. STATE BOARD OF EQUALIZATION et al., Appellants.

STATE BOARD OF EQUALIZATION, Appellant, v. STATE PERSONNEL BOARD, Respondents; DELBERT W. BOUTWELL, Real Party in Interest.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Harold C. Brown and Malcolm M. McCarthy for Respondent and Real Party in Interest.

Byron R. Gregory for Respondent State Personnel Board.

DOOLING, J.—On June 16, 1947, the State Personnel Board certified respondent Boutwell to the State Board of Equalization for probationary appointment to the position of liquor control officer and Boutwell received such appointment. On November 18, 1947 (admittedly within the probationary period), Boutwell was given written notice by appellant of his rejection from his position "because you have failed to demonstrate efficiency in your work" and a notice in writing of this action and the reason therefor was filed with the Personnel Board.

Boutwell appealed from the action of the Board of Equalization to the Personnel Board and after a hearing the Personnel Board found that in the rejection of Boutwell "Section 19173 of the Government Code has not been complied with" and ordered Boutwell restored to his position. The Board of Equalization refused to obey this order, Boutwell filed this action for writ of mandate to compel his restoration and the court after a trial entered judgment that the peremptory writ should issue as prayed. From that judgment this appeal is taken.

The case turns upon the proper construction of sections 19173 and 19175, Government Code. Those sections at that time read:

"§ 19173. Any probationer may be rejected by the appointing power during the probationary period for reasons relating to the probationer's qualifications, the good of the service, or failure to demonstrate merit, efficiency, fitness, and moral responsibility.

"Notice of rejection accompanied by a statement of the specific reasons therefor, truthful within the knowledge of the appointing power or other officer or person in charge of the employee, shall be filed by the appointing power with the

Board and a copy served upon the probationer to give effect to the rejection."

"Sec. 19175. After investigation of the reasons for rejection of a probationer, the board may:

"(a) Restore him to the eligible list for certification to any position within the class other than the position from which he was rejected; or

"(b) If it is determined that Section 19173 has not been complied with, restore him to the position from which he was rejected."

There is no question that in rejecting Boutwell the Board of Equalization followed literally the steps required by section 19173 and specified a reason for its action falling within that section; and the trial court so found. There is likewise no question that the conduct of Boutwell in the position from which he was rejected, which conduct was the basis of the determination of the Board of Equalization that he had failed to demonstrate efficiency in his work, was within the knowledge of the board through the persons in charge of Boutwell, and that they truthfully relied on that conduct in rejecting Boutwell; and the court so found. The basis of the finding of the Personnel Board that in the action of the Board of Equalization section 19173 of the Government Code was not complied with was a reweighing of the facts upon which the Board of Equalization acted and a determination that those facts did not support the conclusion of the Board of Equalization that Boutwell had failed to demonstrate efficiency in his work.

A part of the conduct of Boutwell from which the Board of Equalization drew its conclusion that he failed to demonstrate efficiency may be briefly summarized: 1. While on duty in a public office on several occasions Boutwell read a copy of a weekly publication and while he was so engaged members of the public visited the office and Boutwell was so absorbed in his reading that he failed to serve such members of the public. 2. On one occasion the county probation officer called Boutwell and informed him that two minors were in custody in connection with a violation of the Alcoholic Beverages Act [Stats. 1935, p. 1123; 2 Deering's Gen. Laws, Act 3796] and that the circumstances indicated violations of the law by holders of liquor licenses and Boutwell at the request of the probation officer appeared at a police court hearing involving this matter. Reports of such matters are required

to be made to the Board of Equalization but Boutwell made no report of these activities. 3. Some of the work of liquor control officers is so-called "undercover work" in which the probability of discovering violations of the Alcoholic Beverages Act depends upon the identity of the enforcement officers being unknown to the suspected violators. Boutwell after having been warned not to disclose the fact that he was a liquor control officer was sent to a tavern under suspicion where he met two other liquor control officers. Instead of concealing their positions as instructed Boutwell, although the other officers did not speak to him or give any sign of recognition, addressed them about other enforcement activities in the hearing of several people thereby disclosing that all three were liquor enforcement officers and destroying the possibility of any of the three performing any undercover work in that tavern or its vicinity.

Enough has been stated to demonstrate that the facts were sufficient to support his employer's conclusion that Boutwell had failed to demonstrate efficiency in his work. ■ This question is thus squarely presented: Where the facts known to the appointing power are sufficient to support the conclusion that the probationer has not demonstrated efficiency and the appointing power draws that conclusion and rejects him on that ground, has the Personnel Board under Government Code, section 19175(b), the power to reweigh the evidence, draw the other conclusion and order the probationer restored to his position?

If this power exists it is to be found in the following language of section 19175(b): "If it is determined that section 19173 has not been complied with (the Personnel Board may) restore him to the position. . . ."

To read the power of determining whether section 19173 has been complied with as including the power to reweigh the evidence and reach a conclusion contrary to a reasonably tenable one drawn by the appointing power from the same facts would make it run counter to the prior understanding of the courts as to the purpose of probationary appointments under civil service. This purpose was never more clearly stated in a few words than by our Supreme Court in *Wiles* v. *State Personnel Board*, 19 Cal.2d 344, 347 [121 P.2d 673]:

"The object and purpose of a probationary period is to supplement the work of the civil service examiners in passing on the qualifications and eligibility of the probationer. During

such period the appointive power is given the opportunity to observe the conduct and capacity of the probationer, and if, in the opinion of that power, the probationer is not fitted to discharge the duties of the position, then he may be discharged by the summary method provided for in the Civil Service Act before he acquires permanent civil service status. (See *Neuwald* v. *Brock*, 12 Cal.2d 662, 670 [86 P.2d 1047]; Note: 131 A.L.R. 383.)''

▮ In making the determination whether the probationer has exhibited during his probation the proper qualifications to become a permanent civil service employee the employer under whose direction and observation he is working is in the best position to form a conclusion. As said by the court in *Broyles* v. *State Personnel Board*, 42 Cal.App.2d 303, 307 [108 P.2d 714]:

''The appointing power must necessarily be allowed to exercise discretion and personal judgment in determining whether a probationary employee shall acquire permanent status.''

We are satisfied that, if the Legislature had intended to work such a radical departure from existing theory and practice as to take from the appointing power the determination of whether the probationer's conduct in his employment showed ''failure to demonstrate merit, efficiency, fitness and moral responsibility'' (Gov. Code, § 19173), where that conduct was sufficient to support the appointing power's conclusion, and to transfer that power to the Personnel Board, it would have used clearer language for that purpose than that found in section 19175.

The section has since been amended (Stats. 1949, p. 1072) to give the Personnel Board the power to restore the probationer ''if the board determines, after hearing, that there is no substantial evidence to support the reason or reasons for rejection.'' Whether this amendment enlarged the previous powers of the board (*People* v. *Valentine*, 28 Cal.2d 121, 142 [169 P.2d 1]) or only clarified the meaning of the previous provision (*Metropolitan Water Dist.* v. *Toll*, 1 Cal.2d 421, 427-428 [35 P.2d 519]) we need not pause to inquire.

▮ There was substantial evidence in this case to support the Board of Equalization's reason for rejecting Boutwell and we are satisfied that it complied with section 19173 within the meaning of 19175(b) as it then read and that the Personnel Board's conclusion to the contrary was erroneous and beyond its powers.

The suggestion is made that if the Personnel Board had no power to reweigh the evidence the superior court must have that power under the doctrine of *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119] and the cases which have followed it. Due process of law, stressed in those cases, is not here involved. Boutwell's rights are purely statutory, he has no vested right in public employment other than that given by the statute, and the statute was strictly followed in his rejection. (21 Cal.Jur., Public Officers, § 4, pp. 821-822; *Matter of Carter,* 141 Cal. 316 [74 P. 997]; *Boyd* v. *Pendegast,* 57 Cal.App. 504 [207 P. 713]; *Nider* v. *City Commission,* 36 Cal.App.2d 14, 30 [97 P.2d 293]; *Butterworth* v. *Boyd,* 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838].)

Judgment reversed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied January 5, 1950.