Thomas COOPER, Plaintiff-Appellant
and Cross-Appellee,

v.

CIVIL SERVICE COMMISSION of the CITY AND COUNTY OF DENVER, Colorado, consisting of Oswald C. Abernathy, President, Ted Bach, Commissioner, and Jesse Manzanares, Commissioner; Daniel P. Cronin, Manager of Safety of the City and County of Denver; Arthur G. Dill, Chief of Police of the City and County of Denver; and the City and County of Denver, a municipal corporation, Defendants-Appellees and Cross-Appellants.

No. 77–1080.

Colorado Court of Appeals,
Div. II.

Oct. 11, 1979.

Rehearing Denied Nov. 1, 1979.

Opinion Modified Nov. 29, 1979.

Weltzer & Worstell, Louis A. Weltzer, Fogel, Keating & Wagner, Marshall A. Fogel, Denver, for plaintiff-appellant and cross-appellee.

Max P. Zall, City Atty., Robert D. Dowler, Asst. City Atty., Denver, for defendants-appellees and cross-appellants.

ENOCH, Chief Judge.

Plaintiff, a former police officer, appeals from that part of a judgment of the district court approving an order of the Civil Service Commission that affirmed his discharge from employment. Defendants cross-appeal from that part of the judgment reversing a portion of the commission's order. We affirm in part and reverse in part.

Evidence presented to the Commission showed that on the evening of November 19, 1975, plaintiff, while off-duty, became involved in a domestic dispute with the mother of his baby daughter. During the course of the evening, plaintiff took the child to his own home ostensibly to ensure that she received proper care. When confronted by several police officers who had been called to the scene, he surrendered his service revolver, but later brandished his own revolver, threatening to use it against the baby or himself. This "standoff" lasted some four hours before he agreed to go to the police station. Disciplinary action was initiated against him in which he was charged with violation of various Rules and Regulations of the Denver Police Department, including § RR–401, which states: "Officers shall not unnecessarily draw or display any firearms."

## I.

Plaintiff contends that discharge for violation of this rule was improper because he was not on duty at the time of the incident and, therefore, that the regulation was not applicable. We disagree.

The regulation is not, by its terms, limited to situations in which the police officer is on duty. Nor does it refer exclusively to service revolvers. We note further that police officers are required to be ready at any time to carry out official duties. *Denver Police Department Rules and Regulations* § RR–107.

Section RR–401 speaks to the manner in which an officer is to use firearms, and we reject the contention that an off-duty officer is to be held to a lesser standard in the use of a gun than when he is on duty. We hold that § RR–401 is applicable to police officers whether they are on or off duty, and regardless of what firearm they are using. Any violation of the regulation may be grounds for disciplinary action. *Cf. Thomas v. Denver*, 29 Colo.App. 442, 487 P.2d 591 (1971). (Officer's concealment of conversations about successful undertaking of robbery and kidnapping was conduct at cross-purposes with police functioning.) *See also Cutright v. Civil Service Commission*, 128 Ill.App.2d 331, 262 N.E.2d 102 (1970); *City of Newark v. Massey*, 93 N.J. Super. 317, 225 A.2d 723 (1967).

## II.

Plaintiff also contends that § RR–401 is unconstitutionally vague because men of common intelligence cannot determine from the regulation just what conduct is proscribed, and because of that same vagueness, there is not a sufficiently precise standard to guide the administrative authority in its determination as to whether there has been a violation. We do not agree.

The regulation can withstand a constitutional challenge so long as it is sufficiently clear to apprise those affected of its scope. *Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267 (1976). Common knowledge of what was prohibited by

the regulation could be derived from the training received by all Denver police officers. *See Perea v. Fales,* 39 Cal.App.3d 939, 114 Cal.Rptr. 808 (1974). Here, there was testimony that Denver police are extensively trained that the only proper use of a gun is to save a life.

■ The word "display" as used in the regulation suggests more than merely pulling a gun from a holster or place of safe-keeping. It connotes "an exhibition, an advertisement, an intentional flaunting of the weapon." *Tinner v. Police Board,* 62 Ill. App.3d 204, 19 Ill.Dec. 291, 378 N.E.2d 1166 (1978). There was substantial evidence that plaintiff intentionally exhibited the gun in a manner which was threatening to himself and others. No other officer had drawn his weapon, and the only threat to life was posed by plaintiff's display of a gun. Only police officers are affected by this regulation, and we conclude that the regulation is sufficiently clear and understandable to that group to be valid and enforceable.

■ The second phase of plaintiff's attack on the constitutionality of the regulation relates to his concern that, because of its imprecise wording, there is nothing to guide the Chief of Police, the Manager of Public Safety, and the Commission so as to prevent an arbitrary or capricious determination of misconduct. Again, we do not agree. When a regulation does not contain specific standards, the certainty required by the Constitution "may be provided by the common knowledge of members of the particular vocation . . . ." *Perea v. Fales, supra.* Thus, for the same reasons we rejected plaintiff's first argument, we do not find the regulation to be unconstitutionally vague.

### III.

Plaintiff next contends that his discharge was improper because the Commission made no findings regarding *unnecessary* display of a firearm. We disagree.

■ The standard of review under Rule 106(a)(4) of final administrative action is whether, on the basis of the whole record, the ultimate findings of the agency are supported by any competent evidence. *Civil Service Commission v. Doyle,* 174 Colo. 149, 483 P.2d 380 (1971). While there is no language of necessity in the findings of the Commission, there is the ultimate finding that plaintiff "unquestionably violated" Specification 4, as set out in the disciplinary order of the Chief of Police. Specification 4 alleged a violation of that regulation prohibiting *unnecessary* display of firearms. Moreover, the Commission made findings on which the ultimate implicit finding of an unnecessary display could be grounded. Therefore, we decline to reverse the Commission's order merely because its ultimate finding was not expressed in the technical language of the specified violation. *See Sundance Hills Homeowners Ass'n v. County Commissioners,* 188 Colo. 321, 534 P.2d 1212 (1975).

### IV.

Plaintiff complains of the procedure employed in his discharge. First, he contends that the Charter of the City and County of Denver gives an opportunity for a full evidentiary hearing before the start of any disciplinary action. Second, he alleges that his Fifth Amendment privilege against self-incrimination was violated because his initial opportunity to make a statement to the Chief of Police was under the cloud of a criminal indictment arising from these events. Thus he felt constrained not to make a statement. We disagree with both contentions.

Plaintiff admits that the evidentiary hearing by the Commission met the constitutional requirements of procedural fairness in quasi-judicial proceedings. However, he reads the Denver City Charter as vesting him with a right to more than minimal procedural safeguards. Plaintiff contends that the *Denver City Charter* § C–5.73–2(1) gives an officer a right to a full evidentiary hearing *prior* to disciplinary action by the Chief of Police. That portion of the Charter states:

"The Chief of Police . . . shall . . initiate disciplinary action by written

command, ordering the specific disciplinary action, which written command shall be submitted to the Manager of Safety and Excise for approval, together with a written specification of charges and a written report, setting forth, in summary, the evidence of and reasons for such charges, which written report shall include a summary of the disciplinary record of the person charged, and which written report shall also include a showing that *the member of the classified service affected thereby was advised of the intention to initiate the disciplinary action and that such classified service member was given an opportunity to make a statement,* after the charges against him were read and explained." (emphasis added)

 We do not agree with plaintiff's contention. The plain wording of the Charter provision demonstrates that a full evidentiary pre-dismissal hearing is not required, and procedural due process is provided where there is a prompt post-dismissal hearing. *Cain v. Civil Service Commission,* 159 Colo. 360, 411 P.2d 778 (1966).

As to his contention regarding his privilege against self-incrimination, plaintiff relies upon *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). However, we do not agree with plaintiff's interpretation of that case. In *Garrity,* several officers under investigation for "fixing" traffic tickets made statements which were later used against them in criminal proceedings. The Supreme Court found the statements were unconstitutionally compelled because they were made as a matter of choice between forfeiting employment for refusal, or risking self-incrimination if the statements were made as requested. The cases following *Garrity* involve the same or similar factual settings and are distinguishable from this case.

Plaintiff does not claim, and the record does not show, that any direct economic sanction was threatened in an effort by the city to obtain his statement. While it is true that disciplinary action did result in his discharge from the police force, there was

no threat of automatic termination if he chose not to make the statement provided for by Charter. Thus, *Garrity* is inapposite.

 The fact that civil and criminal proceedings are simultaneously initiated against a person is not grounds for finding an infringement of the safeguards guaranteed under the Fifth Amendment. Unless the government or its agents brings a civil action "solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution," there is no violation of the privilege. *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

### V.

On cross-appeal, defendants challenge the district court reversal of the Commission's order that plaintiff had also "disobeyed an order" in violation of Denver Police Department Rules & Regulations § RR–117. Prior to the Commission hearing, two charges were merged under the alleged violation of § RR–117. It is the merged charges which are the subject of this cross-appeal.

The Commission concluded that plaintiff had violated both § RR–401 and § RR–117. However, the district court reversed the conclusion that plaintiff violated § RR–117 on grounds that it "is not sustained by the record and is not sustained by the Commission's findings."

 The absence of findings by an administrative board is not fatal to a decision if there is evidence in the record which supports the board's conclusion. *Sundance Hills Homeowners Ass'n v. County Commissioners, supra.* Here, although the evidence was contradictory, there was testimony as to numerous requests made by command and supervisory officers which would support the Commission's conclusion that plaintiff was ordered to give up his gun. Thus, there was evidence to justify the Commission's conclusion that plaintiff was disobedient to an order in violation of § RR–117, and the court erred in ruling to the contrary.

That part of the judgment upholding the Commission's order concerning violation of § RR–104, and plaintiff's discharge from employment is affirmed. That part of the judgment which overruled the Commission's order concerning violation of § RR–117 is reversed, and the cause is remanded with directions to reinstate that part of the Commission's order.

PIERCE and SMITH, JJ., concur.